UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| CHRISTINE TIMMON, | ) |
| Plaintiff, | ) Case No. 1:07-cv-999 |
| v. | ) Honorable Janet T. Neff |
| HAROLD LEEMAN, et al., | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

This is a civil rights action brought by a *pro se* plaintiff under 42 U.S.C. §§ 1983 and 1985(3).  Plaintiff's complaint, which is brought against members of the Lansing City Council and two other municipal employees, arises from a decision of the Lansing City Council at its meeting of June 18, 2007, to deny part of plaintiff's request for a monetary grant.  Plaintiff, who is a producer of public access cable programs, had applied to the city for cable-casting grants totaling $718.50.  The Lansing City Council ultimately granted part of the request, but denied plaintiff's application for a $300.00 grant to purchase "set pieces," consisting of design panels, plants, and chairs.  In the present action, plaintiff sues members of the Lansing City Council, as well as the City Attorney and the Manager of City TV, alleging a violation of her civil rights arising from the partial denial of the grant application.  Defendants have moved to dismiss or for summary judgment.

By order of reference dated January 31, 2008, District Judge Janet T. Neff referred the motion to dismiss or for summary judgment to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil

Procedure. (docket # 16). Plaintiff has responded to the motion, which is now ready for decision. Because the motion raises only legal issues, I have concluded that oral argument would not be helpful to the court. *See* W.D. MICH. LCIVR 7.2(d). For the reasons set forth below, I conclude that the members of the Lansing City Council are entitled to summary judgment on the ground of legislative immunity and that plaintiff has failed to state a claim upon which relief can be granted against defendants Smith and Schmidt.

## **Allegations of Complaint**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that complaints set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's complaint in this case is hardly a model of compliance with the rule. The complaint sets forth, with no particular organization, allegations of fact, citations to legal authority, and quasi-legalistic arguments. Additionally, the complaint attaches and relies on over 100 pages of exhibits, which include newspaper articles, handwritten letters, and pictures of plaintiff with various public officials, among numerous other things. Nevertheless, the court is required to read the submissions of *pro se* plaintiffs indulgently in an effort to discern the substance of their claims. *See Haines v. Kerner*, 404 U.S. 519 (1972). The following is an attempt to comply with that requirement.

Plaintiff Christine Timmon is a community activist. One of her activities is the production of television programs for the public access television channel in the Lansing area. Another of plaintiff's activities is the frequent exercise of her First Amendment right to petition the government, principally the Lansing City Council. Previous lawsuits in this court chronicle plaintiff's history of availing herself of the right to address the City Council during the period of

council meetings devoted to public comment and the friction and conflict that have arisen therefrom. One of plaintiff's previous lawsuits, *Timmon v. Wood, et al.*, case no. 5:05-cv-127, challenged the constitutionality of the City Council's Rule 19, which prohibited certain defamatory and disorderly statements made during the public comment period. In that case, the Sixth Circuit Court of Appeals found that plaintiff's First Amendment challenge to Rule 19 was substantial enough to survive summary judgment. *Timmon v. Wood*, No. 06-2069 (6th Cir. June 14, 2007). (Compl., Ex. 5). That case is presently pending before District Judge Robert Jonker.

The present case principally arises from plaintiff's request for a public access grant. Plaintiff submitted to the City of Lansing applications for community cable-casting grants totaling $718.50. At its meeting of June 18, 2007, the City Council granted $418.00 of the request but denied the cash portion of the grant in the amount of $300.00. (Compl. ¶ 1). Apparently, defendant Kaltenbach, the Council Chair, informed plaintiff that the reason for the denial was the Council's understanding that the Comcast studios on Miller Road would be closing and that, as a consequence, the City Council would not be funding any cash grants. Plaintiff identifies defendant Schmidt, the Director of Lansing City TV, as the source of this information concerning Comcast's intentions. (Compl. ¶ 3). Plaintiff alleges that she requested that Kaltenbach or the City Attorney, defendant Bingham Smith, produce some proof that Comcast would be closing that studio, but that they failed or refused to do so. (Compl. ¶¶ 4-6).

Plaintiff's complaint alleges that she has been labeled as one of the "regulars" by the City Council. Although the allegations in the complaint on this subject are opaque, newspaper articles attached to the complaint disclose that reporters have described plaintiff and others who frequently speak at City Council meetings as "Monday night regulars." (*See, e.g.,* Compl. Ex. 4, at

p. 10). Plaintiff's complaint alleges that the City Council's decision to fund only part of her grant application was motivated by its animus against her as a member of the "regulars." Plaintiff asserts that her membership in this group is sufficient for a cause of action of discrimination based on "class-based animus" under 42 U.S.C. § 1985(3).  "[The City Council] created the class-based animus known as 'The Regulars.'" (Compl. at 4). She further alleges that this pejorative label has deprived her of a liberty interest without due process of law under the "stigma plus" doctrine. Further, she alleges a retaliation claim under the First Amendment, asserting that the denial of her application by the City Council was in response to her previous exercise of her right to free speech.

### Defendants' Motion

Defendants' hybrid motion to dismiss or for summary judgment raises four issues. First, defendants assert that plaintiff's allegations are insufficient to state a claim for conspiracy under 42 U.S.C. § 1985(3).  Second, defendants argue that plaintiff has not stated a claim under 42 U.S.C. § 1983 for infringement of her First Amendment rights. Third, defendants Leeman, Dunbar, Wood, Allen, and Kaltenbach claim entitlement to absolute legislative immunity, and Lansing City Attorney Smith raises the defense of absolute prosecutorial immunity. Finally, defendants Schmidt and Smith argue in the alternative that the complaint fails to state a claim upon which relief can be granted against them.

In her response to the motion (docket # 12), plaintiff concedes (contrary to the allegations in the complaint) that the group of "Monday Night Regulars" is not a racial or other class-based group sufficient to sustain a conspiracy claim under 42 U.S.C. § 1985(3). Instead, she asserts that "it is political animus, not class-based animus" that motivated the City Council. (Objection,

docket # 12, at 1). Plaintiff argues in favor of her theory based upon deprivation of a "stigma plus" liberty interest (*Id.* at 2), but her argument is frankly incomprehensible. Plaintiff asserts that no defendant is entitled to the protection of any theory of immunity.

## Applicable Standards

### A.   Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Roberts v. Ward*, 468 F.3d 963, 967 (6th Cir. 2006); *Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005). While the standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006); *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671-72 (6th Cir. 2006); *National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005). Courts are not required to conjure up unpleaded allegations. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004). The court need not accept as true legal conclusions or unwarranted factual inferences. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed

attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Southeast Texas Inns, Inc.*, 462 F.3d at 671-72; *Mezibov*, 411 F.3d at 716.

Plaintiff elected to support her complaint with exhibits. Plaintiff's exhibits are properly considered in evaluating defendants' motion to dismiss. *See* FED. R. CIV. P. 10(c); *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603-04 (6th Cir. 2005); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Never Tell Farm, LLC v. Airdrie Stud, Inc.*, 123 F. App'x 194, 197 (6th Cir. 2005).

### B. Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006)). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly

supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).

## Discussion

### A. Conspiracy Claim Under 42 U.S.C. § 1985(3)

Plaintiff brings a claim for civil conspiracy under 42 U.S.C. § 1985(3), which provides in relevant part as follows:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiff's theory appears to be that the members of the Lansing City Council conspired for the purpose of depriving her of a $300 cash grant in violation of section 1985(3).

In order to prove a private conspiracy in violation of the first clause of section 1985(3), a plaintiff must prove: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) and an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir. 1996). The plaintiff must

also show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005); *Smith*, 136 F.3d at 1078. "Further, 'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim.'" *Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 832 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1358-39 (6th Cir. 1987)).

Defendants assert that plaintiff's complaint, which alleged that the City Council was motivated by plaintiff's membership in the group of "regulars," is insufficient to constitute "racial, or other class-based, invidiously discriminatory animus" within the meaning of *Griffin*. In response, plaintiff shifted ground, conceding that her membership in the group was not a motivating factor. Rather, plaintiff asserts that the Council's decision was motivated by political animus. (Objection, docket # 12, at 1). Although retaliation against an individual on account of her political beliefs can support a claim under 42 U.S.C. § 1983, it is insufficient to support a conspiracy claim under section 1985(3). The Sixth Circuit has held that section 1985(3) reaches only "clearly defined classes," such as supporters of a political candidate. *See Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir. 1987); *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973). To qualify under section 1985(3), the class must either involve individuals who enjoy heightened protection under the Equal Protection Clause or "those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000). Plaintiff has not identified any "clearly defined" class, such as the members of a political party or the adherents of a particular political candidate. The group of people who happen to speak regularly at Council meetings is

hardly a clearly defined class. Plaintiff asserts only that the City Council acted because of its political animus against her, not any definable class.

Plaintiff's brief admitted that the Council's action was not class-based, but was motivated by political animus. This admission is fatal to her conspiracy claim. Although such conduct may be actionable, it does not support a conspiracy claim under section 1985(3).

### B. Stigma-Plus Claim

Plaintiff insistently advances what she calls a "stigma-plus" claim. As defined by the Supreme Court in *Paul v. Davis*, 424 U.S. 693 (1976), the stigma-plus test is used to analyze a *procedural due-process claim* where the action taken by the state injures the plaintiff's reputation. "The frequently drastic effect of the 'stigma' which may result from defamation by the government . . . does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural due process protection of the Due Process Clause." 424 U.S. at 701. Consequently, to allege a successful procedural due-process claim under this theory, plaintiff must show that the state's action both damaged her reputation (the stigma) and that it "deprived [her] of a right previously held under state law" (the plus). *See Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 501-02 (6th Cir. 2007). The mere recitation of these requirements demonstrates that plaintiff has no "stigma-plus" claim in this case, because she is not asserting a procedural due-process claim. The Sixth Circuit repeatedly holds that the stigma-plus analysis is limited to claims of procedural due process. *See Does v. Munoz*, 507 F.3d 961, 966 n.1 (6th Cir. 2007); *Doe*, 490 F.3d at 502. Plaintiff has not even attempted to allege a procedural due-process claim, and it is difficult to discern what that claim

might be, even if pleaded. The City Council did nothing to deprive plaintiff of a right previously held by her under state law; it merely decided to fund only part of her grant request.

Plaintiff therefore fails to state a claim for deprivation of procedural due process under the "stigma-plus" test.

### C. Retaliation

Read with the required liberality, plaintiff's complaint alleges a claim under 42 U.S.C. § 1983 for retaliation. It is well established that the government may not deny a benefit to a person because of his previous exercise of constitutionally protected speech. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). It is not necessary that a particular benefit involve a recognized liberty or property interest. *See Board of County Comm'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668 (1996) (non-renewal of plaintiff's at-will government contract in retaliation for exercise of free speech is actionable). Under Sixth Circuit law, the three elements of a retaliation claim are:

(1) the plaintiff was engaged in a constitutionally protected activity;

(2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely deter a person of ordinary firmness from continuing to engage in that activity; and

(3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 395-99 (6th Cir. 1999) (*en banc*).

Plaintiff's complaint is sufficient to allege a claim of retaliation under this test. Plaintiff chronicles a number of her previous exercises of First Amendment speech with regard to city affairs, and the court may certainly take judicial notice on the basis of other pending cases that

plaintiff's aggressive criticism of city government has caused friction. Plaintiff alleges that the City Council denied her application because of her history of criticism and, at least at the pleading stage, it may be presumed that a person of ordinary firmness would be deterred from future criticisms by the knowledge that the City Council will take such criticisms in account when deciding whether to award grants. The court is required to accept plaintiff's allegations as true for purposes of testing the legal sufficiency of the complaint.

The complaint is therefore sufficient to state a claim for retaliation against defendants Leeman, Wood, Allen, Dunbar and Kaltenbach, the members of the City Council who voted to deny plaintiff's application in part.[1] These defendants, however, have asserted that they are immune from suit for their decision on grant applications by reason of legislative immunity. The defense of legislative immunity in this case is clearly meritorious under the controlling authority of *Bogan v. Scott-Harris*, 523 U.S. 44 (1998). In *Bogan*, a unanimous Supreme Court extended to local officials performing legislative functions the same "well established" absolute immunity from civil liability previously enjoyed by federal, state and regional legislators. 523 U.S. at 46. Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Whether a defendant is entitled to immunity turns on the nature of the act, rather than on the motive or intent of the official performing it. *Id.* Thus, legislative immunity cannot be defeated by an allegation of bad motive or an assertion that the legislator acted to intimidate the plaintiff or to deter her from exercising her

---

[1] Defendants' papers are devoid of any allegation that defendant Schmidt or defendant Smith had any authority to vote on the issue of whether the city would approve or deny the grant.

constitutional rights. *Id.* at 55. Immunity depends on the function performed, not questions of motive. *Id.*

The Charter of the City of Lansing invests the members of the City Council with "all of the rights appropriate to city legislators" and provides that the responsibilities and activities of the Council "shall be legislative in nature." Lansing City Charter § 3-207. The grants in question were awarded by formal resolution (Def. Ex. 3, City Council minutes of 6/18/07 at 201). Questions of budget and the expenditure of city funds are quintessentially legislative functions. *See Bogan*, 523 U.S. at 55; *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988). Defendants Wood, Allen, Leeman, Dunbar and Kaltenbach are therefore entitled to summary judgment in their favor on plaintiff's retaliation claim, on the grounds of absolute legislative immunity.

### D. Claims Against Defendants Smith and Schmidt

#### 1. City Attorney Brigham Smith

The allegations in the complaint against City Attorney Smith are as follows:

- Mr. Smith was quoted in an article in the Lansing City Pulse (Compl., Ex. 4, at p. 2) as saying that he would seek a court order to stop plaintiff from filing frivolous suits. "That put Timmon in a bad public light and many questioned her credibility." (Compl. at 4).

- Smith published statements "that claimed Plaintiff committed defamation and made personal attacks against councilmembers." (Compl. at 5).

- Plaintiff requested that Mr. Kaltenbach or Mr. Smith produce a letter or some proof that Comcast would be closing the Miller Road studio to justify denying the cash portion of plaintiff's cable grant. (Compl. at 6).

- Plaintiff contacted defendant Smith asking for proof that Comcast was closing the Miller Road studio, but he refused to provide documentation. (Compl. at 7).

The foregoing allegations, accepted as true for present purposes, fail to state a claim upon which relief can be granted against defendant Smith on any legal theory. Smith's comments to the effect that plaintiff's previous cases were frivolous and his statement that he would be seeking court intervention to prevent future abuses are simply not actionable. The First Amendment is a two-way street. Just as plaintiff is privileged to express her opinion that the City Clerk violated the Michigan Constitution or that a City Council member is a "cheater," so is Mr. Smith privileged to express his opinion that plaintiff's lawsuits are "frivolous." Smith's statement is obviously one of opinion, and is not even actionable under state defamation law, *see Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995) (expressions of opinion are not actionable in defamation), much less is it sufficient to allege a federal due-process claim. There is no federally protected liberty or property interest in one's reputation alone, and defamation is not actionable as a constitutional violation. *See Paul v. Davis*, 424 U.S. at 701. A successful plaintiff must therefore allege that a state's action both damaged her reputation and that it deprived her of a right previously held under state law. *Doe*, 490 F.3d at 501-02. Plaintiff's allegations against Smith arising from his public statements fall far short of this standard.

The remainder of plaintiff's allegations against Smith have to do with his inability or willingness to provide satisfactory proof concerning the Comcast operation on Miller Road. The

Constitution does not oblige municipal officials to answer every request made by the public or to justify their actions to them.  Plaintiff's claims against Smith should therefore be dismissed for failure to state a claim upon which relief can be granted.

        2.    <u>Defendant Karen Schmidt</u>

The complaint alleges that Karen Schmidt is the Director of Lansing City TV and that she is secretary to the Cable Advisory Board.  (Compl. at 3).  The only allegation against her is that she told Mr. Kaltenbach that the Comcast studios on Miller Road would be closing.  (Compl. at 5). Whether this statement was true or false, it cannot possibly establish a federal claim against Ms. Schmidt under any theory.  She is entitled to dismissal of the complaint against her under Rule 12(b)(6).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion to dismiss or for summary judgment be granted, as follows:

    A.    Summary judgment should be granted against plaintiff and in favor of defendants Wood, Allen, Leeman, Dunbar, and Kaltenbach on the ground of absolute legislative immunity.

    B.    The complaint against defendants Brigham Smith and Karen Schmidt should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  March 13, 2008                /s/  Joseph G. Scoville
                                            United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).